# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TK ELEVATOR CORPORATION f/k/a thyssenkrupp Elevator Corporation, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BRET ABELS, an individual; and SCHUMACHER ELEVATOR COMPANY, an Iowa Corporation,<br><br>Defendants. | CIVIL ACTION NO.: 4:21CV3116<br><br><br><br>**STIPULATED PRODUCTION FORMAT AND E-DISCOVERY PROTOCOL** |

Plaintiff TK Elevator Corporation f/k/a thyssenkrupp Elevator Corporation ("Plaintiff"), Defendant Bret Abels ("Abels"), and Defendant Schumacher Elevator Company ("Schumacher"), stipulate to and jointly move the Court to enter the ESI Protocol outlined below (the "Protocol"). The motion is granted. (Filing No. 55):

### A. Preliminary Matters

1. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

2. Documents that present imaging or formatting problems shall promptly be identified and, if the documents cannot be readily re-produced without problems, the parties shall promptly meet and confer to resolve the problems.

### B. Document Image Format.

1. Paper Documents - Hard copy documents shall be produced in single page TIFF. If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as they

1

existed in the original when creating the image file. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained throughout the scanning or conversion process.

2. Electronic Files (except spreadsheets and presentations) - Electronic documents shall be produced in single page TIFF, with the exception of non-redacted spreadsheets, e.g. Excel, and presentations, e.g., PowerPoint; however, a requesting party may make a subsequent request for native format production upon particularized need pursuant to Paragraph I below. Metadata for documents generated from native electronic documents shall be produced as set forth in Paragraph K. Electronic files, whether converted to images or produced in native format, also shall be produced with parent and child files intact; appropriate Parent ID and Child ID numbers shall be provided. When a document is withheld for any reason and is part of a family of documents, its absence should be designated with a placeholder image with a corresponding production number, confidential designation, if any.

3. Spreadsheets and Presentations - Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain files to be produced in native file format in the first instance (*e.g.*, Excel, Lotus 123 or Power Point); the parties therefore agree the producing party shall produce spreadsheets, such as those created in Excel or Lotus 123 or presentations, such as PowerPoint, in native format pursuant to Paragraph I below. The

parties reserve the right to omit placeholder images for large quantities of native files. The parties must disclose the Bates range of files being produced without placeholders, or otherwise appropriately identify them for the receiving party.

4. Electronic files, whether converted to images or produced in native format shall be produced with the entire family files intact; appropriate Begin Family document ID and End Family document ID numbers shall be provided

5. All TIFFs shall be placed in an Images folder with subfolders not to exceed 5,000 images per folder and accompanied by appropriate load files for the document management or litigation support software being used by the receiving party (such as .dii, .opt, .dat, etc.), which shall be placed in a data folder.

C. **Privileged Documents.**

1. Breaking family relationship – when a document is withheld for privilege and is part of a family of documents, its absence due to privilege should be designated with a placeholder image with a corresponding production number, which then should be noted on the contemporaneously prepared Privilege Log that is to be prepared pursuant to Paragraph N herein.

2. Unredacted text contained in redacted documents must be searchable.

3. If a native file needs to be redacted, it may be produced in redacted form as an imaged document.

4. Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work product protected ESI is not a waiver in the pending case or in any other

federal or state proceeding.

**D.    Color.** Documents containing color need not be originally produced in color. However, if an original document contains color necessary to understand the meaning, context, or content of the documents, the producing party shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document.

**E.    Duplicates.** To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) reside within a party's data set, each party is only required to produce a single copy of a responsive document. This de-duping should be done only on exact duplicate documents, meaning the parent and child documents are exactly the same. De-duplication done within and across custodians (horizontal de-duplication) is acceptable as long as both parties have provided notification of same. Also, any horizontal de-duplication must be done in a manner to preserve information on blind copy (BCC) recipients of emails. Parties must take care to ensure that when custodians are eliminated from a data set for review and production, de-duplication was not based on that custodian's data set. When horizontal de-duplication is employed, the producing party must provide information identifying the data sets from which duplicates were removed, such as through a "duplicate custodian" field.

"Loose" electronic files and user files will not be de-duplicated against email attachments of the same files. If a "Loose" electronic file or user file is a duplicate of a document in the e-mail data (i.e., an attachment to an e-mail), the parties shall produce separately both the e-mail data, including the attachments, and the "Loose" electronic files and user files.

E-mail "Threading" - The parties are generally not required to produce an original e-mail and its responses thereto as separate, unique documents. The parties are allowed, but not required, to produce the final, all-inclusive "thread" to represent the comprehensive e-mail conversation. Any and all divergences from the all-inclusive thread by any custodian must be separately assessed for production. If a receiving party believes there is a need for production of emails separately within a given thread, the producing party shall produce them separately or the parties will promptly meet and confer to attempt to resolve the issue.

F.      **Application of Search Terms.** A party must notify the other party if search terms are to be applied to cull down ESI and share the search terms used to locate documents potentially responsive to opposing party's requests for production of documents.

G.      **Production Numbering.** Each page of a produced document shall have a legible, unique page identifier (Production Number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information on the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable), placeholder text (where applicable), redactions, and the Production Number identified above. The confidential legend shall be "burned" onto the document's image at a location that does not unreasonably obliterate or obscure any information on the source document. For native file production, the production number shall be prepended (along with any confidentiality labeling) to the beginning of the document and the native files will be placed in a Native folder.  An image placeholder will represent the native file and an accompanying text file will be used to load the document link to the native file into the litigation support software.

Each party will be assigned a unique identifying name for their productions:

1. Plaintiff will use "TK" as the prefix and six digits (i.e., "TK000001") to identify all paper documents, electronically stored information, or imaged documents converted from paper (see above regarding native).

2. Abels will use his name as the prefix and six digits (i.e., "Abels000001") to identify all paper documents, electronically stored information, or imaged documents converted from paper.

3. Schumacher will use its name as the prefix and six digits (i.e, "Schumacher000001") to identify all paper documents, electronically stored information, or imaged documents converted from paper.

H. **Native File Production.** The following paragraphs apply to native files, including the initial native production of spreadsheets and presentation files:

1. The parties agree that after the initial production in TIFF, a party seeking production in Native format must demonstrate a particularized need for the production. If any documents were initially produced in TIFF, and native production is subsequently agreed to, the party shall produce a cross reference table (in .csv format) that references the native documents to the originally produced TIFF documents, showing the native file extension and the TIFF document number.

2. Native file production numbering. For all documents produced in native format, each party's unique identifying name (see prepending above) and placed in a Natives folder.

3. For each document produced in native format, a HASH value shall be provided for each document and included with the production in the form of a cross-

        reference file (.csv, .dat or .txt) containing the metadata fields (see paragraph K).

    4. If a file produced in native format is designated as "confidential," the Production Media on which this file is produced must be labeled appropriately.

    5. For any file produced in native format that is entitled to be redacted pursuant to an agreement of the parties, applicable law or otherwise by Order of the Court, the parties shall meet and confer with respect to suitable techniques and methods of redaction to preserve the integrity of the data while protecting information subject to privilege or other protections. If a file cannot be redacted prior to production, the parties shall agree to take such other steps as may be necessary.

    **I.**    **Production Media.** All productions shall be made by secure file transfer, such as Accellion. If a receiving party requires their production on CD-ROM, DVD, or external drive, it must notify the producing party in advance of the production. If a producing party cannot make a production via secure file transfer, it must likewise notify the receiving party in advance and accommodate an alternative requested media. The secure file transfer or other production media must identify: (1) the producing party's name; (2) the production range; (3) the production date; and (4) a statement of whether the file transfer or media contains information that is subject to the Protective Order or confidentiality designation. If the production is made via secure file transfer, it must also provide instructions for downloading the materials and the required timeframe for the download.

    **J.**    **Meta-Data, Searchable Text, and Other Field Information**. The producing party's extractions of the following metadata fields, where available, will be accompanied by a

load file to the requesting party:

- Title for user files, if it exists;
- Author for user files;
- (application/document) Date created for user files;
- (application/document) last modified date for user files;
- (application/document) last accessed for user files;
- Date and time received for e-mails;
- Date and time sent for e-mails;
- To, From, CC, and BCC for e-mails;
- File path;
- File name;
- File size;
- Hash (also identify which value used);
- Application
- File extension;
- Conversation Index for emails, if it exists;
- Duplicate custodian.

Producing parties will also produce the following additional information as described below with each production:

- Starting Production (beginning document production number);
- Ending Production (ending document production number);
- Parent Production Number and Child/Attachment Production Number;
- Custodian;

8

- Source (location from which the document(s) was collected or file path;
- Document properties (i.e., loose file, email, attachment, hard copy, calendar appointment).

The metadata listed above shall be labeled as such in the "loadable" file and produced on Production Media and shall be provided in a manner suitable for importing the information in a commercially available document management or litigation support software such as Relativity (.csv, .dat, or .txt) and placed in a Data folder.

Searchable Text/OCR. For the images generated from native electronic files, a producing party shall produce full text extracted from the electronic files, accompanied by a load file. For redacted documents, full text consisting of OCR will be provided. The .txt/OCR will be provided in document level, in a Fulltext folder, with the docid (beginning bates number) and file path location of the text provided in the .dat (located in the Data folder). It is the producing party's obligation to make sure that documents containing text are searchable to the extent practicable. The producing party is obligated to promptly raise any issues that arise pertaining to non-searchable data containing text.

For any document where the body cannot be extracted, the producing party will generate and provide searchable text.

The parties also agree to provide OCR for images generated from paper documents if the producing party has it; the parties agree to negotiate how the costs of this OCR shall be shared.

**K.     Production of Other Electronic Documents.** This stipulation only applies to the production of the following categories of electronic documents: e-mails (and any associated attachments) and user files (word processing documents, spreadsheets and presentations.) The

9

parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing, including databases, voicemail, websites, video, text messages, and social media pages.

**L.** **Exceptions to Protocol.** If the forms of production allowed by this Protocol present an undue burden or cost for a producing party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion to seek individual relief from this Protocol.

**M.** **Privilege Logs.** The producing party will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data. The privilege log will be produced within 45 days of each individual party's completion of all document productions. The parties agree, per the parties Rule 26(f) Report, that any communication with legal counsel and clients created on or after January 22, 2021 need not be logged. The contents of privilege logs must comply with the requirements of the United States District Court for the District of Nebraska.

**N.** **Costs of Production.** In addition to those specific circumstances agreed to herein, the parties reserve the right to seek cost shifting as appropriate at a later time.

This Protocol does not restrict the parties' rights under Rule 26(b)(2)(B) or (C). 34(a), and 34(b)(2).

DATED this 25th day of April, 2022.

APPROVED:

_____
Cheryl R. Zwart
United States Magistrate Judge