IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TK ELEVATOR CORPORATION, a Delaware corporation;<br><br>Plaintiff,<br><br>vs.<br><br>BRET ABELS, an individual; and SCHUMACHER ELEVATOR COMPANY, an Iowa corporation;<br><br>Defendants. | **4:21CV3116**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the following motions:

- Plaintiff TK Elevator Corporation's ("TKE") Motion to Compel Responses to Discovery and Rule 34 Forensic examination (Filing No. 81);

- Defendant Schumacher Elevator Company's ("Schumacher") Motion to Strike Plaintiff's Supplemental Initial Disclosures, or in the Alternative, Motion for Protective Order and for Appropriate Sanctions (Filing No. 94); and,

- Schumacher's motion for leave to file a surreply to Plaintiff's motion to compel (Filing No. 105).

For the reasons discussed below, the Plaintiff's motion will be granted in part and denied in part, and Defendant's motions will be granted.

## BACKGROUND

TKE filed a complaint against Defendants Bret Abels and Schumacher on June 9, 2021. (Filing No. 1). TKE alleges Abels violated certain employment agreements with TKE, and misappropriated TKE's "confidential, proprietary, and/or trade secret information for use in his respective relationships with

Schumacher, and has or will convey, share, or otherwise disclose that information to Schumacher," his current employer. (Filing No. 22 at CM/ECF p. 3).

Specifically, the complaint alleges claims for Breach of Contract, Unfair Competition, and Breach of Duty of Loyalty against Abels and Tortious Interference with Contract against Schumacher. The complaint also alleges claims against both Abels and Schumacher for unjust enrichment, violation of the Nebraska Trade Secrets Act (Neb. Rev. Stat. § 87-501), and violation of the Defend Trade Secrets Act (18 U.S.C. § § 1832 and 1839).

Abels filed a counterclaim for declaratory judgment, alleging there is a dispute regarding whether certain agreements and restrictive covenants are valid. (Filing No. 13, See, also Filing No. 22 at CM/ECF p. 4).

The parties' joint Rule 26(f) meeting report, filed on October 14, 2021 contains a section labeled "Unique Circumstances." (Filing No. 22 at CM/ECF p. 10). It states:

> The following facts or circumstances unique to this case will make discovery more difficult and likely more time consuming if certain procedures are not put in place:
>
> (1)      TKE has alleged that (certain unidentified) "trade secrets" were misappropriated and/or improperly used. The parties have conferred and TKE has agreed to disclose, with particularity, the trade secret(s) at issue prior to Defendants responding to any written or deposition discovery.  TKE agrees to provide such list to Defendants following entry of a Protective Order in this case, and no later than November 17, 2021.
>
> (2)      Certain claims or defenses by the parties relate to the identification of the alleged trade secret(s). The required disclosure of information between the parties related to what alleged trade secret(s)

are at issue should not be disclosed to the public without a protective order in place.

Counsel proposes that a protective order, stipulated to by all parties, shall be submitted to the Court to address any confidential matters that should not be disseminated to the public domain. Said discovery material will be marked either "Confidential" or "Attorneys' Eyes Only."

(Filing No. 22 at CM/ECF p. 11). The court entered the Final Progression Order for this case on October 15, 2021. (Filing No. 25). It contains a paragraph stating "The parties shall comply with all other stipulations and agreements recited in their Rule 26(f) planning report that are not inconsistent with this order." (Filing No. 25 at CM/ECF p. 2, paragraph 11).

On November 17, 2021, Plaintiff filed an unopposed motion to extend the deadline to disclose, with particularity, the trade secrets at issue. (Filing No. 26). The motion was granted by text order, and the deadline was extended to December 3, 2021. (Filing No. 27). On November 22, 2021, the parties jointly moved for a protective order and the parties' proposed order was entered the next day. (Filing No. 28, Filing No. 29).

On December 3, 2021, TKE served its initial disclosures, identifying four documents as the trade secrets at issue. (Filing No. 107-2 at CM/ECF p. 7). The parties concluded written discovery in April 2022. On July 22, 2022, TKE supplemented its written discovery responses, and Rule 26 Disclosures. (Filing No. 64). The supplemental initial disclosures identified six "new" trade secrets. TKE included a statement that "Discovery is ongoing, and Plaintiff reserves the right to supplement its identification of trade secret documents and information as discovery progresses." (Filing No. 107-4).

A telephone conference was held on July 25, 2022 with the court addressing the discovery dispute related to the "new" trade secrets at issue in the pending motion to strike, as well as Defendants' objections to certain discovery Plaintiff sought through interrogatories, requests for production of documents, and requests for production of tangible electronic devices or electronically stored items for forensic inspection. After conferring with the parties, the undersigned set deadlines for filing any motions related to the topics addressed during the call.

ANALYSIS

I.    Motion to Strike or for Protective Order

Defendant Schumacher filed the pending motion to strike, requesting that the court either strike Plaintiff's supplemental initial disclosures, or enter a protective order and sanctions because "TKE blatantly disregarded the Parties' agreement, relevant case law, and this Court's orders to explain *why* these six additional trade [secrets] were not identified early before discovery began." ([Filing No. 94 at CM/ECF p. 3](), emphasis in original). Schumacher alleges that if the "new" trade secrets are not stricken, or a protective order is not entered limiting discovery to the original four trade secrets, Defendants will be prejudiced by either the inability to seek written discovery related to the new trade secrets, or the delay and expense of reopening written discovery.

In response, TKE argues the sole purpose of the "unique circumstances" section in the Rule 26(f) report was to address Defendants' concern that absent particularity, discovery regarding the trade secrets at issue would become a "fishing expedition," and the Rule 26(f) Report was silent as to TKE's ability to supplement its list. TKE asserts that the stipulation in the parties' Rule 26(f) Report does not include an express waiver of the right to supplement or modify the trade secret list upon learning their disclosure was " 'incomplete or incorrect' 'in some

material respect.' " (Filing No. 106 at CM/ECF p. 8, citing Fed. R. Civ. P. 26(e)(1)(A) and (B)). Thus, TKE argues they were not prohibited from supplementing their disclosures to include additional trade secrets, and Defendants will not suffer any substantial prejudice because depositions in this case have not yet begun.

Fed. R. Civ. P. 26(e) requires a party to "supplement or correct" a prior disclosure based on information later acquired. It imposes a duty on the producing party to supplement information that is incorrect or incomplete. But it does not permit adding claims and issues which could have, and should have been included in the original report, and it "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the 'supplement' label." TIC - The Indus. Co. Wyoming v. Factory Mut. Ins. Co., No. 4:10CV3153, 2012 WL 2830867, at *10 (D. Neb. July 10, 2012).[1]

"The general rule is that parties are bound by stipulations voluntarily made." Elevator Ass'n Non-Stock of Big Springs, Neb. v. Strand, 382 F.2d 224, 231 (8th Cir. 1967). Here, the parties stipulated that trade secret disclosure should occur at the outset of the litigation, prior to discovery to aid the parties due to the "unique circumstances" in this case. The parties' progression order adopted by reference the stipulations of the parties expressed in the Rule 26(f) report.[2]

---

[1]     The court notes that although both the initial disclosures served on December 3, 2021 and supplemental disclosures served on July 22, 2022 include a statement that Plaintiff reserves the right to supplement its identification of trade secret documents, this statement is not binding because it is not what was stipulated to in the parties' joint Rule 26(f) Report, and it is contrary to the parties' prior agreement.

[2]     Plaintiff has not asked to modify the parties' deadline to disclose the alleged trade secret list. Even if it had, a progression order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(a)(4).

> The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.... While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [the court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines.

Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 717 (8th Cir. 2008).

During the July 25, 2022 telephone conference, TKE counsel represented to the court that the documents were "discovered" through the forensic report of Abels' TKE-issued computer. TKE counsel was unsure of the date of the forensic report and stated that the disclosures were supplemented as soon as they knew about them. (Filing No. 66, audio file at 1:37:00-1:40:00) Defense counsel noted that a forensic search had been done at the outset of the case, to which TKE's counsel responded that there had been multiple searches done and she was unsure which searches disclosed the documents. (Filing No. 66, audio file, at 1:33:00-1:40:00).

> During the call, the undersigned advised TKE:
>
>> The timeline is going to be important because stipulations that are made in the 26(f) report, I make the parties comply with them. And, while you can say in your mandatory disclosures that discovery is ongoing . . . they didn't agree to you expanding the scope of discovery beyond what you stated in the 26(f) report. So, in my mind you would have to show some good cause as to why you couldn't have discovered this before you set the parameters at the very beginning. That's not always the case, but it is in this one because that's what you agreed to do.
>>
>> . . .
>>
>> The way you've described it now, you could come out with another four documents five weeks from now because your discovery is ongoing . . . but that's not what you agreed to in the Rule 26(f) report. . . . I want to hear what you have to say on that and I'm willing to look very closely at what excuse you have for not naming the trade secrets at the very beginning. But I think particularly in a trade secrets case, everybody is entitled to know what precisely are we talking about here.

(Filing No. 66, audio file at 1:38:00-1:40:00)

> In response to Schumacher's motion, TKE's brief states:
>
>> The reason why TKE needed to supplement its trade secrets is unremarkable. After meeting and conferring with Schumacher's

counsel concerning Schumacher's response to TKE's written discovery, TKE agreed to identify relevant customers that it alleges Mr. Abels improperly solicited. TKE investigated all customers that it could determine to be at issue to help Schumacher respond to Interrogatory No. 3. Based on this investigation, TKE created a list of customers at issue in this case and sent it to Schumacher's attorneys. In digging deeper for purposes of compiling the list for Schumacher, it became apparent to TKE that Mr. Abels may have misappropriated more trade secret documents than TKE had been able to ascertain through its previous reasonable review of available records. These materials included documents detailing the preferences and business history of customers who Mr. Abels solicited.

(Filing No. 106 at CM/ECF p. 6). The foregoing does nothing to explain why trade secrets were not known or could not have been known prior to July 2022, especially given that the TKE-issued computer, and by extension, the subject documents, were in TKE's possession from the outset of this litigation. Federal Rule of Civil Procedure 26(a)(1)(E) states "A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures."

Plaintiff has cited no specific evidence which explains when it knew these additional documents were at issue. Plaintiff's explanation that "it became apparent to TKE" that Mr. Abels may have misappropriated trade secret documents not initially identified does little to explain why disclosure of additional trade secrets could not have been made at the outset in accordance with the parties' agreed-upon disclosure deadline. (Filing No. 106 at CM/ECF p. 21, citing Filing No. 107-6 at CM/ECF pp. 2-3, paragraphs 4-5).

Additionally, as Schumacher points out, TKE alleged that it had conducted a forensic examination of Abels' TKE-issue laptop prior to the Rule 26 conference, and prior to the lawsuit being filed. TKE also produced a spreadsheet of recovered files, showing the names of the six additional documents alleged to be trade secrets in February 2022. (Filing No. 96-4). Going one step deeper, analysis of the spreadsheet metadata indicates the spreadsheet document was created on February 22, 2021, prior to the filing of this action, and the document was "Last Modified" on the same day. (Filing No. 96-5). This indicates that the entries showing the "new" trade secrets documents were not added to the spreadsheet as part of a later forensic search. Rather, the batch of data included in Filing No. 96-4 was all added in February 2021. Because TKE was in possession of these documents at all times relevant to this case, no good cause can be shown for the delayed disclosure of the six trade secrets identified in Plaintiff's supplemental Rule 26 disclosure.

To allow the addition of the "new" trade secrets at this point would broaden the scope of the existing claims and associated discovery and potentially require reopening written discovery, all of which adds both time and expense to the case. See, generally CFGenome, LLC v. Streck, Inc., No. 4:16CV3130, 2019 WL 913848, at *2 (D. Neb. Feb. 25, 2019). Presumably to avoid unreasonable and expensive delays in performing discovery, the parties entered into a stipulation requiring all trade secrets at issue to be identified at the beginning of this case. The court will enforce that stipulation. Accordingly, Plaintiff's "new" trade secret disclosure will be stricken and the trade secrets identified in that disclosure will not be at issue in this litigation.[3]

---

[3]    Schumacher argues that if its motion for protective order is granted, it is entitled to attorney fees under Fed. R. Civ. P. 37(a)(5)(A) and 37(b)(2)(C). As this issue was decided on Schumacher's motion to strike, the court does not reach the protective order issue, or any associated attorney fees under Rule 37.

II.     Motion to Compel

TKE moves for an order compelling Defendant Abels and Defendant Schumacher to perform revised searches for customer contacts in response to Interrogatory No. 3 and supplement their previous responses. (Filing No. 81). TKE also requests the Defendants be compelled to provide supplemental responses to certain requests for production consistent with any new customers identified in response to Interrogatory No. 3 (for Abels – RFP Nos. 6 and 12, for Schumacher - RFP Nos. 6, 12, 13, and 14).

TKE requests that Schumacher be ordered to perform a revised search for documents responsive to Request for Production No. 5. (Filing No. 82 at CM/ECF p. 21). TKE further requests the production of Defendant Abels' Schumacher-issued electronic devices and personal electronic devices to TKE's digital forensics agent, or a third-party neutral, for forensic imaging and inspection pursuant to Request for Production No. 16. (Id.) The facts relevant to each set of requests are detailed below.

A. Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure, amended on December 1, 2015, limits the scope of discovery to:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts must examine each case individually to determine the weight and importance of the proportionality factors. Although the burden of demonstrating the proportionality of the requested information is a collective responsibility between the parties and the court, a party requesting discovery must show how the requested information is important to the issues and resolution of the case. The party requesting discovery must present a threshold showing of relevance before parties are required to "open wide the doors of discovery" and "produce a variety of information which does not reasonably bear upon the issues in the case." Doe v. Bd. of Trustees of Nebraska State Colleges, No. 8:17CV265, 2018 WL 4190056, at *1–2 (D. Neb. Aug. 31, 2018), citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992). Discovery requests are considered relevant if there is any possibility that the information sought is relevant to any issue in the case. But mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. See Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972). "While the standard of relevance in the context of discovery is broader than in the context of admissibility, ... this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." Hofer, 981 F.2d at 380.

Sweeping discovery requests which are not tailored to obtain only information relevant or capable of leading to the discovery of information relevant to this case are overbroad. "A party resisting facially overbroad ... discovery need not provide specific, detailed support" to raise and stand on its objections. Madden v. Antonov, 2014 WL 4295288, 3 (D. Neb. 2014); Carlton v. Union Pacific R. Co., 2006 WL 2220977, 5 (D. Neb. 2006) (citing Contracom Commodity Trading Co. v. Seaboard, 189 F.R.D. 655, 665 (D. Kan. 1999) ).

B. Analysis

1. Interrogatory No. 3 and the Related Requests for Production

**Interrogatory 3**: Identify all customers: (i) who were customers of TKE at the time of Abels' termination of employment from TKE, (ii) with whom Abels had contact, business or other dealings, or who Abels solicited on behalf of TKE, in the two years preceding his termination of employment with TKE, and (iii) with whom Abels has had contact after his termination of his employment with TKE.

Abels' response to Interrogatory No. 3 stated that he had requested business records and information from TKE regarding the TKE customers with whom he had contact (responsive to Interrogatory No. 3 subparts i and ii), and stated that once received, Abels would update his answer. Schumacher's response to Interrogatory No. 3 said the interrogatory is directed to Defendant Abels, and Schumacher lacked knowledge of the customers that Abels had contacted during his final two years at TKE. (Filing No. 83-13 at CM/ECF pp. 5-6).

Logically, as a competitor with TKE, Schumacher lacks firsthand knowledge of Abels' business dealings during his employment with TKE. TKE provided Defendants with a list of 43 customers they believed were lost or for whom they performed reduced business near the time of Abels' departure. (Filing No. 82 at CM/ECF p. 9, n. 6). This list was later narrowed to 20.

Once TKE provided a customer list, Abels and his counsel reviewed the list of 43 customers, and in doing so identified one customer (Concorde Management) Abels worked with in the two years prior to his resignation from TKE. Concorde Management allegedly independently reached out to Schumacher for a project prior to Abels' resignation from TKE. (Filing No. 83-5).

Schumacher reviewed TKE's production to identify customers "with whom [Abel] had substantial contact within the two years prior to leaving TKE." (Filing No. 87 at CM/ECF p. 4). Schumacher ran a search for documents that showed the customers' names and involvement with Abels, including any customer who "Abels at least appeared to be somehow involved with while at TKE simply by virtue of his name on a sender or recipient email." (Filing No. 91-1 at CM/ECF p. 4). The resulting search returned 31 documents involving Abels and five TKE customers: Concorde Management Company, Prime Therapeutics, Purdue Global, US Bank, and Malone Manor[4]. Schumacher then searched for documents responsive to TKE's requests for production using the five customer names.

TKE asserts Defendants' searches were patently deficient. (Filing No. 82 at CM/ECF p. 10). As TKE writes in their brief, under Nebraska law, "a 'non-compete' provision must be limited to non-solicitation of customers with whom the affected employee had personal contact and actually did business." W. Point Auto & Truck Ctr., Inc. v. Klitz, 492 F. Supp. 3d 936, 944 (D. Neb. 2020), citing Prof'l Bus. Servs. Co. v. Rosno, 268 Neb. 99, 680 N.W.2d 176, 186 (2004). TKE has argued that as Abels was a branch manager, any client of that branch could be considered to have had sufficient contact with Abels to be considered a customer.

However, the Nebraska Supreme Court noted that "generally, a noncompete covenant is more restrictive than reasonably necessary if it restricts an employee from working for or soliciting all of the former employer's clients or accounts, regardless of whether the former employee actually did business with and had personal contact with those clients. Pro. Bus. Servs. Co. v. Rosno, 268 Neb. 99,

---

[4]    TKE asserts the Defendants' responses are inconsistent, given that Abels provided one customer name, while Schumacher provided five. However, Schumacher's described methodology explains this discrepancy, as Schumacher's search would encompass any time Abels and a specific customer were both included in a particular email exchange, even as a cc'd recipient, while Abels' response included only his recollection and records of actual communication with the 20 customers on TKE's list.

111, 680 N.W.2d 176, 185 (2004) citing Polly v. Ray D. Hilderman & Co., 225 Neb. 662, 668, 407 N.W.2d 751, 756 (1987). The Nebraska Supreme Court has found that unfair competition occurs when an employee has "substantial personal contact with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer." Aon Consulting, Inc. v. Midlands Financial Benefits, Inc., 275 Neb. 642 (2008). Applying these definitions, the universe of relevant customers in this case is those customers who fit the criteria of having personal contact and actually doing business with Abels, not every customer TKE lost in proximity to Abels' resignation.

As to Abels, TKE asserts he failed to identify customers with whom he had "contact" during the relevant period and the resulting responses to the requests for production were too limited. The evidence presented shows Abels reviewed the list of customers that TKE identified as having contact with Abels, and Abels then responded as to the customers that fit subparts i, ii, and iii, of Interrogatory No. 3. TKE's motion to compel a further response from Abels as to the other 19 customers TKE identified will be denied.

However, TKE may not be able to identify all customers who communicated with Abels because the user-created data on Abels' TKE-issued cell phone was deleted shortly before his resignation. This could include those communications which took place in person, by telephone, or by text message. If Abels has not done so already, he must search his own records and recollection for customers who fit the description set forth in Interrogatory No. 3. This information must immediately be disclosed and his responses to the Requests for Production Nos. 6 and 12 must be updated accordingly.  If there are no other customers who fit these criteria, Abels must provide an affidavit attesting to the methodology for his search, and the results.

As to Schumacher, TKE asserts the company's search within TKE's document production for email and document responses involving Abels and the 20 customers TKE identified artificially narrowed the universe of possible responses to Interrogatory No. 3 because it disregards potential contact Abels had with the 20 customers that were made in person, over the phone, or in any other kind of meeting. Thus, TKE argues Schumacher improperly limited its responses to Requests for Production Nos. 6, 12, 13 and 14 to the five customers identified through analysis of email and document exchanges. TKE argues that Schumacher should have searched for all twenty of these names in their own records, not just the five customers. It therefore requests a supplement to Schumacher's response to Interrogatory No. 3 and updated responses to the identified Requests for Production for the remaining 15 customers.

Using TKE's list of customers as a starting reference, Schumacher responded to Interrogatory No. 3 and the associated requests for production by identifying companies with whom Abels either recalled working or, upon review of documents, had at least some minimal contact. (See Filing No. 91-1 at CM/ECF p. 3). Schumacher has sufficiently responded to Interrogatory No. 3. TKE's motion to compel a further response from Schumacher as to this interrogatory and the related requests for production (6, 12, 13 and 14) will be denied.

2. Schumacher Request for Production No. 5[5]

---

[5]    Schumacher asserts the dispute regarding Request for Production No. 5 is untimely, as it was raised after the motion to compel deadline in the Final Progression order dated April 26, 2022. (Filing No. 58). The court notes that the parties were advised their disputes were preserved for argument before the undersigned on July 25, 2022. (Filing No. 91-5). Schumacher states that it is unclear why TKE's RFP No. 5 was not addressed sooner, and no request to amend the scheduling order was made to accommodate this dispute.

During the telephone conference on July 25, 2022, the undersigned set the motion to compel deadline for August 29, 2022. (Filing No. 66, audio file, at 2:38:00). After TKE emailed the court stating there was a dispute related to RFP No. 5 which had not been discussed during the July 25, 2022 call, the

TKE asserts Schumacher raised meritless objections and failed to perform a reasonable search in response to Request for Production 5, which requests:

> **Request for Production 5:** All electronically stored information, documents, or tangible items related to TKE or TKE's business (i) that Abels had in his possession, custody, or control as of the date of his termination of employment with TKE, and (ii) that are currently in Defendants' possession, custody, or control, including, but not limited to, any and all electronically stored information, documents, or tangible items that are  arguably TKE's property, that derived from TKE's property (e.g., TKE documents that have been edited), or that contain TKE's name, symbol, mark, trademark, or other insignia of any kind.

(Filing No. 83-12 at CM/ECF pp. 5-6). Schumacher objected to the breadth of this request and the use of the vague term "tangible items," but nonetheless performed a search for the four trade secret documents identified in TKE's original initial disclosures. Schumacher's response included a statement that "it could not represent with certainty what documents, information, or other items Defendant Abels had in his possession as of the date of his termination from TKE." (Filing No. 83-12 at CM/ECF p. 7).

In the instant motion, TKE asserts that as Abels' employer, Schumacher has access and control over the documents in Abels' work files, work computer, and work cellphone, and it has the ability and duty to access and search these documents in response to discovery. (Filing No. 82 at CM/ECF p. 22, quoting Evenson v. Johson Bros. Liquor Co., 2020 WL 12948540 at *8 (D. Minn. May 19,

---

court initially set another conference call. But, after reviewing the parties' respective summaries, the undersigned determined that a compromised resolution was unlikely, and the motion to compel deadline was extended to September 9, 2022 to accommodate the filing of the motion. Although this issue was not raised before the motion to compel deadline set in the progression order, the court impliedly permitted the motion to be filed regarding the disputes that had been emailed to the court. Therefore, the court will not consider this issue untimely raised and will review it on the merits.

2020). However, in response, Schumacher argues that it <u>did</u> conduct a forensic analysis of Abels' Schumacher-issued devices for the trade secret documents (Exhibits A-D) and concluded that none of the documents existed within Abels' devices and ESI. (Filing No. 91-6). The search included a file name search and an advanced keyword search and only near-term file hits were generated, with no hits on the alleged trade secret files.[6] Schumacher cannot produce what it has not found during a search of Abels' Schumacher-issued devices.

TKE also asserts "to the extent Schumacher argues it cannot tell whether documents held by Mr. Abels originated at TKE, it has plentiful options, including simply asking Mr. Abels." (Filing No. 82 at CM/ECF p. 22). TKE requests an order compelling a revised search for documents responsive to this Request utilizing the information available to Schumacher, including Abels himself. (Filing No. 82 at CM/ECF p. 23). However, TKE served Request for Production No. 5 on Abels as well, (Filing No. 83-4 at CM/ECF p. 5), and TKE has not moved to compel a further response from Abels or alleged that Abels' response was deficient. The court will not compel Schumacher to produce a further response to RFP No. 5 based upon information gleaned from or corroborated by Abels, when Abels has already personally responded to the same request.

TKE also argues Schumacher should have conducted a search for the six alleged trade secret documents in TKE's supplemental disclosures. TKE states "it is TKE's understanding that Schumacher did not search for the six additional trade secrets identified in TKE's supplemental disclosures, or anything else beyond the four original trade secret documents." (Filing No. 22 at CM/ECF p. 22). The undersigned has concluded that the trade secrets disclosed in TKE's supplemental

---

[6]   In its reply, TKE asserts Schumacher's search using MD5 Hash was insufficient because "MD5 Hash is like a fingerprint" and any document that was modified would make a match impossible. (Filing No. 101 at CM/ECF p. 10, n 9). Even so, a keyword search was also performed, which would seemingly mitigate this issue.

disclosures were not timely disclosed under the parties' stipulation, thus Schumacher's alleged failure to search for these documents is not relevant to the court's determination of the pending motion to compel.

In its reply brief, TKE argues that regardless of whether they are permitted as a basis for TKE's trade secret claim, Schumacher should have searched for the six additional alleged trade secret documents because they are relevant to TKE's noncompete claims. Upon review, Schumacher responded to the requests for production in April 2022, and TKE did not assert the relevance of the six additional documents until July 2022. Schumacher will not be compelled to complete another search or produce documents that TKE did not assert were at issue when the requests were initially served.

3.   Request for Inspection No. 16

**Request No. 16:** Produce for inspection all ESI Sources as defined in the attached Inspection Protocol, on Thursday, March 24, 2022, at 9:00 a.m. Central (or such other date and time as mutually agreed upon by the parties), at TKE's offices located at 13275 Cornhusker Rd, Omaha, NE 68138 (or such location as mutually agreed upon by the parties).  The manner of inspection and protocol to be followed during inspection is outlined in the attached Inspection Protocol.
(Filing No. 83-12 at CM/ECF p. 13).

The proposed protocol included all mobile devices, electronic data storage devices, file hosting services, and email accounts Abels owned or had access to from July 1, 2020 to the present. (Filing No. 83-11 at CM/ECF p. 17).  Defendants object to RFP No. 16 on the grounds that it is unreasonably intrusive, overly broad and burdensome, disproportionate to the needs of the case, seeks documents and information irrelevant to the allegations claims and defenses asserted in this case, and is cumulative as the responsive documents and information which have been

or will be produced. (Filing No. 83-12 at CM/ECF pp. 13-14, 83-4 at CM/ECF pp. 7-8).

In their email to the court describing the discovery dispute, TKE wrote:

> TKE requests the Court compel Defendants to produce certain relevant devices to a neutral third-party examiner for forensic examination and search. Specifically, TKE requests a forensic inspection of all mobile devices, electronic data storage devices, computers, file-hosting services, and email accounts which (1) Defendant Bret Abels and (2) Jeff Schumacher[7] had access, ownership, possession, custody, or control during a narrowly tailored time period so that TKE can determine whether any TKE or TKE-originated documents reside, or once resided, on any such devices or systems. For those two custodians, TKE agrees to limit the scope of the search to November 1, 2020 (the date in which Abels indicated he began discussions with Jeff Schumacher) through present for personal devices and systems and from January 21, 2021 (the date in which Abels began his employment at Schumacher) until present for the custodians' work-issued devices and systems. TKE agrees to further limit the scope of the search by agreeing on a set of reasonable search terms. TKE is agreeable that any non-privileged, responsive documents can be designated as attorneys' eyes only and the parties should split the associated cost. What exists on these devices and systems, when and what documents were viewed, saved, modified, or downloaded, and what may have once existed but has since been deleted, is critical to the claims and defenses at issue in this case involving allegations of trade secrets misappropriation.

(Filing No. 91-4).

The forensic inspection TKE requests is a "mirror image," generally described as a "forensic duplicate, which replicates bit for bit sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." Filing No. 82 at CM/ECF p. 24, quoting Balboa Threadworks, Inc. v. Stucky, 2006 WL 763668 at * 2 (D. Kan. Mar. 24, 2006).

---

[7]     There is no indication in the pending motion to compel that TKE still seeks access a forensic inspection of Jeff Schumacher's devices and accounts.

Federal Rule of Civil Procedure 34(a)(1)(A) allows a party to serve on another party a request "within the scope of Rule 26(b)" to permit inspection of "any designated documents or electronically stored information–including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations–stored in any medium from which information can be obtained ...." However, Rule 34(a) does not give the requesting party the right to search through all of the responding party's records. See Ameriwood Indus., Inc. v. Liberman, No. 4:06CV524-DJS, 2006 WL 3825291, at *2 (E.D. Mo. Dec. 27, 2006), as amended on clarification, No. 4:06CV524-DJS, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007), citing In re Ford Motor Co., 345 F.3d 1315, 1316–17 (11th Cir.2003).

As quoted in further detail, above, Rule 26(b)(1) allows for discovery of nonprivileged and relevant matter that is proportional to the needs of the case. The 2015 amendments to Rule 26 "restore[d] the proportionality factors to their original place in defining the scope of discovery." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. The phrase "reasonably calculated to lead to the discovery of admissible evidence" was deleted because the phrase had been used incorrectly to expand the scope of discovery. Id. As amended, the rule still allows for "[d]iscovery of nonprivileged information not admissible in evidence ... so long as it is otherwise within the scope of discovery." Id.

Courts start from the position that granting a forensic inspection of an opponent's electronic storage device "is highly intrusive." A.M. Castle & Co. v. Byrne, 123 F. Supp. 3d 895, 900 (S.D. Tex. 2015). Additionally, skepticism concerning whether a party has produced all responsive, non-privileged material from the target electronic devices is not a sufficient reason, standing alone, to warrant production of the hard drives. See Ameriwood, at *4, citing McCurdy Group v. Am. Biomedical Group, Inc., 9 Fed. Appx. 822, 831 (10th Cir.2001).

However, such inspections are sometimes justified, especially in cases where the device itself and the possible discovery of electronic data about its use is relevant to the claims and defenses in the suit. Id. A case involving the alleged misappropriation of trade secrets can be one such a cause of action. Additionally, where "there are discrepancies or inconsistencies in the responding party's discovery responses, a court may allow an expert to examine a mirror image of the party's hard drives." Id. Here, Schumacher alleges it has already conducted a thorough search of the relevant Schumacher-issued devices, and responsive documents have been provided. But due to the clear mistrust between the parties, TKE wants to independently verify Schumacher's responses, and conduct a much broader search of the subject devices and accounts for information that is present and currently exists, and information that previously existed and was lost or destroyed. (See Filing No. 82 at CM/ECF p. 26).

TKE's main argument in favor of this inspection is that Abels may have accessed and stored TKE's confidential information and removed it from O'Keefe- or TKE-issued devices via USB, and then used that USB to use TKE's information while employed by Schumacher. Although inspecting Abels' devices is likely to yield information that would either prove or disprove the parties' respective positions as to Abels' alleged use of TKE information, the court must also consider proportionality factors.

TKE has identified four documents that have been allegedly misappropriated. An inspection of Abels' personal and Schumacher-issued devices including mobile devices, electronic data storage devices, computers, file-hosting services, and email accounts, *as well as every one of these items or accounts Abels had access to*, is extremely broad. The court will not allow a mirror-image forensic search of every digital file Abels' had access to in the relevant time period. To allow a forensic inspection of these devices, drives, services, or

accounts would require at the very least, deduplication, a review by counsel for irrelevant and privileged information and information which must be labeled confidential or attorney's eyes only pursuant to the parties' protective orders. The search described would be intrusive, costly, time-consuming, and encompass documents well beyond the scope of this lawsuit. The facts asserted do not justify the type of sweeping search proposed. As the undersigned advised during the telephone conference on July 25, 2022, "You wouldn't have been able to ask to go to the file cabinet that is labeled 'Abels,' hand us everything in the file cabinet, hand us that drawer . . ., [and] that's how this is worded." Filing No. 66, audio file, at 00:56:00). See, also Daimler Truck N. Am. LLC v. Younessi, 2008 WL 2519845, at *3 (W.D. Wash. June 20, 2008).

The devices and accounts TKE seeks to image are not the devices Abels used at TKE. Rather, they are the devices that Abels used while employed by Schumacher, which TKE asserts Abels may have used to access data taken from TKE. Ordinarily these devices and accounts would be well beyond the scope of reasonable discovery. However, there are certain concerning inconsistencies in the facts as presented which indicate that a more limited search may be justified. For example, Abels has maintained that he does not have a personal cell phone or a personal computer, and that he does not have and has not used a USB drive, Dropbox account, or personal email address. (Filing No. 66, audio file, at 15:00, Filing No. 85-2 at CM/ECF p. 2; Filing No. 83-9 at CM/ECF p. 2). TKE has provided evidence to refute each of these points.[8] Abels then offered evidence to explain or

---

[8]     TKE has produced the affidavit of Shawn Kerr, a Computer Forensic Specialist who performed a forensic examination of Abels' O'Keefe and TKE issued computers. Kerr stated that:
- On September 14, 2020, a Lexar USB drive was inserted into Abels' TKE-issued computer. The drive contained at least one highly sensitive document that is the same or similar to the trade secret document identified as Exhibit D to TKE's initial disclosures (Filing No. 83-8 at CM/ECF pp. 3-4).
- On December 28, 2020, the computer was used to log into a Dropbox cloud storage account.
- On January 4, 2021 a backup copy was created of Abels' entire TKE contact list.
- Between January 4, 2021 and January 15, 2021, Abels' computer was used to access TKE company files, showing customer information and information on pricing and bidding.

qualify his prior responses, stating that a USB computer may have been inserted into his computer on one occasion by another employee, and that he may have used Dropbox in the normal course of business for TKE. (Filing No. 91-7 at CM/ECF p. 4).

A forensic inspection of Abels' Schumacher-issued devices would determine if the USB device plugged into Abels' TKE-issued computer was used to transfer files to Schumacher devices. TKE argues that a forensic inspection of Abels' Schumacher-issued devices would determine "if that same USB device was used to transfer files there." (Filing No. 82 at CM/ECF p. 27). Thus, TKE argues, a full forensic collection and search of Defendants' devices is warranted to determine whether files have been accessed, deleted, or forwarded, and whether external storage has been used. Schumacher's brief noted that Schumacher's expert, Roy Rector, can and will, at the expense of TKE[9] perform a USB connectivity analysis using the electronic serial number of the USB-drive to determine whether there is evidence of the device having been plugged into or used on Abels' personal or Schumacher-issued devices. (Filing No. 87 at CM/ECF p. 17, n. 13; Filing No. 91-8 at CM/ECF p. 4). Rector noted that if the USB drive has been connected to the

---

- On or before January 14, 2021, Abels' O'Keefe issued cell phone was wiped of all user-created data, including Abels' call log, text messages, contact lists, and other communication data.

  In December 2020, Abels contacted Gary Weichbrodt, an IT Demand Manager at TKE, for assistance in transferring customer contact lists and emails between his O'Keefe cellphone to a non-TKE issued cell phone. Weichbrodt also assisted Abels in printing his contact list, which was provided to him the week before he resigned. (Filing No. 83-7 at CM/ECF p. 3). Abels also asked Weichbrodt for assistance in transferring his Apple ID from the O'Keefe-issued device to a non-TKE issued cellphone. Weichbrodt maintained a KeePass databased to manage passwords and user accounts and his affidavit states that Abels linked to and used two email accounts V8Rbret@gmail.com and babels9916@gmail.com. (Filing No. 83-7 at CM/ECF p. 3).

[9]   TKE's brief in support of its motion to compel states "Both parties have a chance to benefit from a forensic examination. If a forensic examination returned evidence showing that Mr. Abels never held confidential information on his Schumacher devices, that could potentially support Defendants' defenses in this matter. Both parties have much to gain by such an examination and very little to lose, especially with TKE paying the cost of the examination." (Filing No. 82 at CM/ECF p. 28, n 18). The court takes this statement to mean that TKE would not object to paying for any court-ordered forensic analysis.

computers, it will aid in determining if any further electronic discovery processing is warranted.

While TKE advocates for a full "mirror-image" search of the subject devices, the connectivity analysis is a more narrowly-tailored approach which will provide the information TKE seeks: whether the USB inserted into the TKE device was retained and could have been used by Abels to access TKE documents during his employment with Schumacher.[10] Given the inconsistencies regarding Abels' alleged use of various devices, a USB connectivity analysis will be allowed on Abels' personal and Schumacher-issued devices, assuming TKE can provide the serial number of the USB device allegedly used to access Abels' TKE-issued computer for comparison. This connectivity analysis should be promptly conducted, and the parties' should promptly notify the court if, after it is complete, a need for further inspection of devices is evident.

To the extent that Abels argues he does not have the legal right to produce any of Schumacher's devices (see Filing No. 84 at CM/ECF p. 16, citing American Maplan Corp. v. Heilmayr, 203 F.R.D. 499, 501 (D. Kansas 2001)), this is a non-issue, as Schumacher is Abels' co-defendant and it suggested and affirmatively stated that it would comply with the USB connectivity analysis of the relevant devices.

III.    Motion for surreply

Schumacher requested leave to file a surreply in opposition to TKE's motion to compel for two reasons: to respond to TKE's assertions regarding Schumacher's alleged expert, David Park of Lighthouse Global; and, to argue against TKE's

---

[10]     It would also bear upon the truthfulness of Abels' statements about his ownership and use of USB devices while employed by TKE.

request for fees. Schumacher asserts TKE's request was not timely raised, pursuant to this court's Local Rules. (See NECivR 7.1(c)(2)).

TKE asserts Schumacher lacks good cause for surreply because it does not raise new arguments. However, TKE's reply brief as to the motion to compel raised the issue of its entitlement to attorney fees for the first time. As such, Schumacher did not have an opportunity to respond to TKE's request for fees, particularly as to the substantial justification for its actions, during any of its prior briefing. For this reason, the motion for surreply will be granted and the associated briefing by Schumacher and TKE has been considered in the preparation of this order.

IV.   Requested sanctions

Citing Fed. R. Civ. P. 37 (a)(5)(A), TKE asserts it should be awarded its reasonable attorney's fees and costs incurred in preparing its motion to compel. (Filing No. 101 at CM/ECF p. 15, Filing No 100 at CM/ECF pp. 15-16). It further asserts an award of fees is warranted because Schumacher's failure to respond to discovery was not substantially justified. (Id. at 16).

"Substantial justification exists where there is an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." Smith v. City of Omaha, 2014 WL 4161105, at *2 (D. Neb. Aug. 19, 2014) (citing Charles A. Wright, et al., Federal Practice and Procedure § 2288 (2d ed.1994)). "[C]ourts have generally focused on 'the quality of the justification and the genuineness of the dispute [and whether] an impartial observer would agree that a party had good reason to withhold discovery' " when evaluating substantial justification. Timm Grandview, LLC v. AmGUARD Ins. Co., No. 8:20CV197, 2021 WL 3492757, at *4 (D. Neb. Aug. 9, 2021), quoting Kilpatrick v. King, 2005 WL 2180097, at *2 (D. Neb. Sept. 7, 2005).

Sanctions are meant to deter future sanctionable conduct, to reimburse the moving party for its reasonable expenditures related to the sanctionable conduct, and to control litigation and preserve the integrity of the judicial process. Vallejo v. Amgen, Inc., No. 8:14CV50, 2017 WL 3037391, at *3 (D. Neb. May 30, 2017), aff'd, 903 F.3d 733 (8th Cir. 2018).

TKE asserts Defendants did not have good reason for arbitrarily limiting its search for customers contacted by Abels from 20 to 5 (Schumacher) and from 20 to 1 (Abels), or for not attempting to search for TKE's additional trade secret documents. Having found that Schumacher's search was sufficient, and that additional trade secrets are not at issue in this case, the court cannot find sanctions are warranted on these grounds. Further, Schumacher was reasonably justified in resisting a search of all devices and accounts that Abels had access to, as the search is not proportional to the needs of the case. TKE's request for sanctions is denied.

IT IS ORDERED:

1) Defendant Schumacher's Motion to Strike is granted as set forth above. (Filing No. 94).

2) Plaintiff's motion to compel (Filing No. 81) is granted in part and denied in part as follows:

    a. Plaintiff's motion to compel further responses from Abels as to Interrogatory No. 3 and the associated Requests for Production Nos. 6 and 12 is granted in part, as detailed herein.

    b. Plaintiff's motion to compel further responses from Schumacher as to Interrogatory No. 3 and the associated Requests for Production Nos. 6 and 12, 13, and 14 is denied.

    c. Plaintiff's motion to compel further responses to Request for Production No. 5 is denied.

    d. Plaintiff's motion to compel an inspection pursuant to Request for Production No. 16 is granted in part, as detailed herein.

3) Defendant Schumacher's motion for surreply is granted. ([Filing No. 105](#)).

4) On or before December 20, 2022, the parties shall submit a proposed amended progression schedule to the court by email to [zwart@ned.uscourts.gov](mailto:zwart@ned.uscourts.gov).

Dated this 9th day of December, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge